Thank you, your honor. May it please the court, my name is Danielle Inanow and I represent the appellant, Andrew Choi. With the court's permission, I'd like to reserve three minutes for rebuttal. This is a discrimination and a breach of contract case brought pursuant to Title IX in Oregon common law, but this appeal is not about the merits of Mr. Choi's claims, but rather his denial of repeated efforts to obtain relevant discovery in support of his claims. During the four months that the parties were permitted to engage in discovery, Mr. Choi was required to litigate the three dispositive motions that are at issue in this appeal with essentially one hand tied behind his back. Whereas Mr. Choi was ordered on a date certain to sit for a deposition that lasted the full seven hours on the record down to the last second and otherwise produced all relevant paper documents and ESI in his possession, appellant was never allowed to depose one witness and his motions to compel production of relevant paper and ESI discovery from the appellees was never definitively addressed by the district court because discovery was to stayed to allow for the litigation of So counsel, tell me how you complied with what's now rule 56D with regard to providing an affidavit or declarations that you can't present facts essential to justify the opposition. So where in the record does it say you did this? So there are two 56D motions, Judge Bennett. I've read them. So tell me where the affidavit or declaration is. So just a second so I can look at the And 37 one in volume two is plaintiff's opposition to defendant Schwartzberg Dobby's second motion for summary judgment. And the first exhibit was a declaration for Mr. Choi himself. I've read that and shook. Tell me where in Mr. Choi's affidavit or declaration is there information that for specified reasons, he cannot present facts essential to justify the opposition. Where does it say that in Mr. Choi's declaration? Mr. Choi's declaration. First of all, I wanted to note that that summary judgment motion was filed a week after discovery started. So the standard is a lesser standard for 5060 motions and it's articulated in Burlington Northern San Fe Railroad, which is a Ninth Circuit case from 2003. In that case, counsel, I have sympathy for the merits of your position regarding discovery. But I need you to answer my question, which is where in the record is a declaration or affidavit that 5060? So I believe that Mr. Choi's declaration established that there were material issues of disputed fact that require that were rate that was raised by the untested discovery that was submitted with Professor Schwartzberg Dobby's summary judgment motion. Um, he discussed his experience as a research assistant for other professors and how it was materially different from his experience and expectations pursuant to what he was going to be doing with the Corvette grant. Um, and and we also submitted to the court our discovery requests that sought to get at those material issues of disputed fact. Counsel, focusing on the contract claim for a moment, the district court said the contract was unambiguous. And if we were to agree with that, um, what would follow? What would the conclusion from if we if we take that as a as a correct premise? And I realize you disagree with that. But but if we think the contract is unambiguous, doesn't the parole evidence rule bar the of any evidence? And doesn't doesn't that imply that discovery would not have been helpful to you anyway? So, Your Honor, I think that the response to that question is what does the meaning? What is, you know, what is the definition of ambiguity in the context of contractual interpretation? The is that is unambiguous if it is if if there is no two or more reasonable meanings for the contract. Here it was Mr. Choi's position that the contract could not be read merely within the four corners of the Corvette grant contract or document, but rather what had to also be taken into consideration were read college policies that define but but counsel before you get to that under Oregon law, there has to be ambiguity and you can't start with. We can show you that this can be read in more than one way by parole evidence under Oregon law without getting to an ambiguity. And I mean, from my read of the contract, there is no provision in there which could be which provides that there is a contractual obligation to give your client credit. What provision in there by its terms can be read to impose a contractual duty to give your client credit for his contributions? Your Honor, I disagree with you. I think that the implementation of that collaborative research requires that Mr. Choi receive credit for his work. I don't think that there's any way that the contract could reasonably be read to permit the professor to publish, which she did as her own, his research. The contract doesn't permit that. The whole point of the contract is to encourage student and professor collaborative research and publication. Counselor, Judge Pearson here. Isn't it also a reasonable reading that the contract allows the student to work in concert with the professor and to benefit from that collaborative effort without attribution being a consequence? If you could tell me where attribution is the consequence of that collaboration, I'd like to, but I've read this and I just don't see it there. Your Honor, I think that the term collaborative research can, I don't think it can be understood within the four corners of this document, given the type of relationship that Mr. Choi had with Professor Schwartzberg-Dobby. This is not two parties coming together pursuant to a one-page contract where their entire relationship is defined by that piece of paper. The course of dealing is a necessary component of understanding what was at issue here between the two parties. And collaborative research and publications means what it is. That the two of them were coming together to do the work and both of them were required to have the benefit of doing that work together. And that means a publishing credit for both, not merely the professor. While not under written contract, as in this case, each of the judges before whom you argue now have law clerks, and I doubt my colleagues will list the law clerk's name along with his own. And I don't think anyone would ever expect a different response. And I, a better point maybe for your response is, my reading of your client's request for extrinsic evidence is to create an ambiguity, not to resolve one that already exists. Can you address that for me? Sure, your honor. I highlighted in both the appeals papers submitted to this court and in the district court, admissions that Reed College have made in the public space about the kind of education that is afforded to their students. These admissions demonstrate that Reed College places itself as a singular or one of very few institutions at the undergraduate level that affords students and professors the opportunity to work together, to do collaborative research, and to publish that research. That's exactly what the Corvette Grant promises. And for Reed College now, and for Professor Schwartzberg-Dobby now, to take full credit for work that there was every expectation that Mr. Toye was going to get credit for is a little bit questionable, especially when Reed College, once Professor Schwartzberg-Dobby's motion was granted, Reed College produced evidence from Schwartzberg-Dobby's tenure file that demonstrated that other faculty within her own department raised questions about why Mr. Toye didn't get credit for the work that he contributed to her pursuant to the Corvette Grant. In that letter, the chair of the department, Professor Montgomery, raised that not only had Mr. Toye been erased from her tenure file, but he never received any credit in her book, and he raised that as a red flag. So it's not just me trying to create an ambiguity. It's Reed College employees that raised this. And I'd like to get discovery on it. I don't want to create the evidence in this case, your honors. I want an opportunity to question the witnesses about what the documents say that their employer produced. That's the first dispositive motion. There are two others at issue in this appeal. Should I go on or should I? Well, counsel, it's up to you how much time you want to reserve for your rebuttal. I reserved three minutes. So perhaps I should just speak to the two other issues very quickly. The two other dispositive motions were the summary judgment motion granted to Reed College on contract claims, the sexual harassment policy, and the disability accommodation policy. The problem with granting that summary judgment motion is that, again, Mr. Toye never had an opportunity to pose any witnesses, and Reed College based its entire summary judgment motion on essentially unsworn testimony of its attorney rather than witnesses. The third issue before your honors is the dismissal of the Title IX claim because of statute of limitations issues. It's admitted that the statute of limitations ran. However, it's Mr. Toye's position that he pled sufficient facts in his original plea meeting to make out an equitable estoppel defense that he should have been allowed to conduct discovery on. In the Ninth Circuit, it's well settled that equitable modification of the limitations period is an appropriate remedy when misleading conduct of the defendant induced the plaintiff to delay filing of a notice of intent to sue or a complaint. Here, we had Mr. Toye going back and forth with Reed College administrators about whether and how he would be able to return. He also testified at his own deposition that he was thinking of retaining counsel, and then members of the political science department assured him that if he submitted a detailed complaint to the tenure committee that that would resolve the situation. He did that in 2015, and the tenure committee's chairperson, the dean of faculty, responded two years later in July of 2017. We filed the litigation a few months afterwards. So, respectfully, we request that the court reverse the grant of these dispositive motions and allow Mr. Toye to complete discovery so that we can actually litigate the merits of the case in a fair and equitable manner. All right, we'll give you a little bit of extra time for your rebuttal, counsel. Ms. Barron, you're going to take 10 minutes first. Is that right? Yes, thank you, Your Honor. May it please the court, and good afternoon. I'm Paula Barron. I represent Reed College. I want to respond initially to some things that Ms. Nanau has stated in her argument. The first is the statement that Reed College supported its motion for summary judgment. So, Reed only filed one motion for summary judgment, and that motion was filed in August of 2018, eight full months after the lawsuit was filed and just one week before discovery was set to close. So, the college waited almost the entire period of discovery before even filing the motion. Second, it is inaccurate to say that it was unsupported by evidence. The motion itself was based upon judicial admissions in the form of the pleadings, the complaint, and the documents attached to the complaint. Second, upon Andrew Toye's failure to respond to a set of admissions. And third, and probably most importantly, his sworn testimony, Andrew Toye's sworn testimony at his deposition. It was not based on an unsworn statement of counsel. I think counsel is perhaps talking about the argument in the briefing, but the evidentiary record came out of Andrew Toye's mouth. The next issue is that, Your Honor, you had asked about the two 5060 motions, and counsel only talked about the first one, which related to Professor Davey. There was a second 5060 motion filed to seek to delay Reed's summary judgment motion, the one that was filed in August. And in that one, plaintiff most assuredly did not comply with the requirements of the rule. There was no declaration at all. So, counsel, I'm not suggesting we can put that issue, but for the purpose of my next question, let's at least temporarily put it to the side. So I have looked at several different 30 v. 6 depositions that the plaintiff tried to take in this case. And I know that the first one was far too broad. But, you know, one that I'm looking at from August has seven topics in them. And for the most part, these look very routine in a case like this. So why is it fair that plaintiff basically couldn't take any 30 v. 6 deposition of Reed-like policies and procedures on accommodation of students with disability, on sexual conduct, on the thesis process, on the grant? I mean, these seem very routine, a 30 v. 6 deposition, standard way to go. Why was it reasonable that a plaintiff couldn't take any 30 v. 6? Well, for several reasons, Your Honor. One is that the court had ordered that discovery will end at the end of August. And the plaintiff waited very, very late. And the whole point of setting that time was that the lawsuit had been filed in December. And, of course, the classes were supposed to start up. And the court deliberately said he wanted to move things along. The second was that in the mixture of depositions, plaintiff had been ordered and was late in providing the information, who did she wish to depose. And we had that list. And the 30 v. 6 was on top of it. So it was late. And the court expressed some concern about that. But then, additionally, this was not something that was necessary for the motion that was made. And that was part of the problem with the 50 v. 16 motion that plaintiff had filed. There was nothing that plaintiff submitted in the briefing, let alone in a declaration, that said that this information is necessary for me to respond to the motion. So, counsel, I mean, just my experience is that somebody being, you filed a stay motion at some point, right? To stay discovery? Oh, no, there was a motion to quash a series of subpoenas that had been served. But the court put discovery on hold. Yes, on hold. And, you know, I understand your technical point about what used to be rule 56 F, and it's now rule 60. But still, you know, to decide summary judgment, but not 12 v. 6 or other types of motions without plaintiff having any opportunity to do a 30 v. 6 on the subjects of the motions just strikes me as exceedingly unusual. Does that mean necessarily the court abused its discretion? No, but some of these topics seem very routine to me. The and I think you're honored that one of the things that should be taken under consideration is that at the time the motion was against a contract claim. And we return back to was the contract ambiguous? They were not. And the fact that plaintiffs wanted to find out what other individuals thought about what the contracts met would not have advanced the ball. I mean, I know I quoted, I believe, for the district court, the comments of the Supreme Court in Twombly. Just because you file a lawsuit doesn't mean that you get to take a lot of discovery. And that was the case here. The policies that plaintiffs cited in the complaint and had argued about did not show that this kind of deposition on this very expensive deposition conduct was was appropriate and it wasn't necessary. It wouldn't have even been relevant because, frankly, what a what the registrar or the assistant registrar thought one of these policies met is not not only immaterial, but irrelevant to the issue at hand, which is did the plaintiff provide a genuine issue of material fact? How about this one? So the defendant's policies and procedures that concern sexual misconduct perpetrated by faculty on students, why would that be irrelevant? It would in that particular case, that one would have been absolutely too too broad. And second, there were several additional reasons why that would have been irrelevant. The first of them is that the plaintiff admitted that if he had a sexual relationship with Professor Davey, if he wasn't lying about that, along with everything else that he was lying about and there was one, he did everything he could to have concealed that information from Reed. He didn't disclose it except to a friend until two years after he was gone, swore him to secrecy. And then as part of his complaint, so a judicial admission, he had he wrote first a letter to Professor Davey thanking her for how much she supported him. And then he wrote a letter to the Committee on Advancement and Tenure and said basically she was mean to me. We had a we had a relationship that was marked by working well together, strong chemistry, a familial relationship. But but but can't but can't aren't aren't these types of things often of sexual harassment where victims of sexual harassment or claimed victims of sexual harassment have an accommodation type syndrome? So not getting into whether whether plaintiff was or wasn't harassed, he made an allegation that in violation of the provisions of the code, he had sex with his thesis advisor and and professor. And just it strikes me that getting policies and procedures on sexual misconduct is in the wheelhouse of this kind of claim. So there's no evidence in the record to suggest that that that that was something that delayed him. But also, in addition to that, he the relationship was not expressly forbidden. He had to show that it was something that was legally sexual harassment because there's no language in that policy. It was frowned upon, but it but it wasn't expressly forbidden at the time. And when you have something where you have a witness testifying that this is 100 percent consensual conduct on my part, and then he's given an opportunity to say, do you want her not to be your thesis advisor and admits that he did want her to be a thesis advisor? There isn't enough evidence in the record to present that as a genuine issue of material fact. There's not enough evidence in the record to get to depose Reed on what his sexual harassment policies are. Your Honor, I think on a 30B6, there were several reasons that that the court's decision is supportable and not an abuse of discretion. For one, the language about to depose somebody about the policies is sufficient under Ninth Circuit precedent for a 30B6. It has to be much more specific than that. Second, the policy on its face is what it is. It says what it says. And Andrew Choi's testimony is very specific as to what, you know, as to the issues that were raised. Additionally, even if you gave him, even if you took what he said as being the truth about the relationship, the fact remains that if Professor Davy had had a relationship with him, contrary to Reed, and Reed didn't find out about it until four years after the fact, that does not help his lawsuit. It doesn't give you a breach of contract claim because what you would have is an employee of the couple who violated a college policy that was not a promise to the plaintiff. We were, again, in the realm of contract, not in the realm of statute or discrimination claims. So why don't you finish up, counsel, and to your colleague. I want to, before I cede the time to Professor Davy's counsel, to point out the elephant in this particular room. Reed College gave the plaintiff multiple opportunities, multiple chances, a chance after the faked excuse of being hospitalized and getting a blood transfusion, and then an opportunity to make his thesis better and to come back. He didn't do that. And then he came back and asked for one more opportunity. And, in fact, they told him, and he still had another course to finish as well, so they told him, apply again. They readmitted him, and then he decided not to return. So they took him through. These are the things he admitted were part and parcel of his relationship with Reed. All of the situations that have gotten me in trouble were largely due to lying, including my situation at Reed. Did you lie to the Reed faculty when you were a student? Yes, of course. I was lying all over the place during the last month before my thesis orals. Did you lie about going to Bangladesh? Yes. Did you have a blood transfusion? No. Did you ever have a hard drive crash that had an impact on whether you had your full draft? No. Did your computer ever fail and ruin more than 70% of your thesis? No. I do remember being sick but not with walking pneumonia, so that's a lie. Do you think Reed was obligated to accommodate your lying? Yes. I would submit, Your Honor, that in a breach of contract claim, this is an overwhelming violation of the implied covenant of good faith and fair dealing. Andrew Choi was obligated to Reed to at least tell the truth or some version of the truth. And over and over you see in this record evidence that he wove a tissue of lies and still Reed was there with a handout, offered him an opportunity to return and to repeat his thesis, and he filed the lawsuit instead. And I'll cede to Ms. Runkles-Pearson at this stage. Thank you. Good afternoon, and may it please the Court. My name is T.K. Runkles-Pearson, and I represent Professor Mariello's work for Saudi. I just want to focus the Court very briefly on specifically what the claim is against Professor Ghabi and why, regardless of whatever else might be happening with the claims against Reed College, the Court definitely acted correctly regarding the professor. So the question that the Court had to answer here was, does this document, the letter that you see at ER-202, does it require Professor Schwartzberg-Ghabi to give attribution credit to her undergraduate students for her research? And Oregon law tells us that this is a decision that the Court may make as a matter of law. The Court has to look at the four corners of the contract, together with some of the circumstances of formation, and determine whether or not the material is susceptible to more than one sensible and reasonable interpretation. ORS 42-30 also requires a Court interpreting a document under Oregon law to look at what is contained there and not insert what is not there. And when you look at this document, I think as several of the panel has already noted, there really is nothing here that requires any attribution to Professor Schwartzberg-Ghabi. The opposing counsel has pointed out the word collaborative. I would submit that there's nothing in the word collaborative that requires attribution, as Judge Pearson was saying. In addition to that, however, I think when you look at the four corners of the contract, you'll see that there is an attribution requirement in the last paragraph on ER-202. And that attribution requirement does not require attribution to Mr. Choi. It requires attribution to the research grant. And it seems that if there were to be any other attribution requirement, it could have been very clearly spelled out there. It's simply not. So what is it that Mr. Choi has to insert here into this document in order to make out a claim? Well, first of all, it has to show that there is an obligation on Professor Schwartzberg-Ghabi, as opposed to the college. I think that's an important point to make out here in that a lot of what counsel has talked about, that she wants to look at our policies of Reed College, which are not policies of Professor Schwartzberg-Ghabi. I see that I've run over my time. May I continue or does the court have questions? You know, I don't have any questions. Why don't you take another 30 seconds? Thank you so much, Your Honor. So I guess I would say that in short, when we're looking at the Rule 56 motion for additional discovery here, additional discovery simply isn't relevant to this claim against Professor Schwartzberg-Ghabi because this document is unambiguous. There's nothing further to add to it, nor does the plaintiff point out anything. So for that reason, I think that the judgment ought to be affirmed as to Professor Schwartzberg-Ghabi. Thank you. Thank you. Your Honors, I just want to briefly address Ms. Barron's claims that my client is a pathological liar. On ECF, in this case, she has called him a liar more than 150 times. Most of the things that she has said that she attributes to his deposition and the record is absolutely not in there. And in a case where I have been unable to depose any of her witnesses, it's incomprehensible to me that she can, before this court, insist that it is my client who is lying when we've heard from no one at Reed College. The only time that Mr. Choi admitted he was lying that's relevant to this litigation is when he said he was bullshitting his professors when he was not accommodated during the thesis process and also prior to the thesis process, where he would invent reasons to allow himself more time to complete his work, to get his professors off his back. Because at Reed College, not only are you required to provide medical evidence of your disability, but you also then have to negotiate individual accommodations, student and professor. There is no intermediary with the college. And that is the only time that he testified that he was lying. I believe that what's really important here is the evidence in the record from Reed College employees, where they raised red flags about Schwartzberg Dobby's treatment of Mr. Choi. And that is what Reed College has not discussed during this entire litigation. And I would like to have the opportunity to ask those witnesses relevant questions about the red flags that they raised about their colleague and why nothing was done to bring him back to the school so that he could get his degree. All right. Thank you. We thank counsel for their helpful arguments. This case will be submitted. And with that, we are adjourned for the day. Thank you. Thank you, Your Honors.
judges: Pearson, Bennett, Miller